We will hear argument first this morning in Case 24-316, Kennedy v. Braidwood Mgmt. Mr. Mupan? Mr. Chief Justice, and may it please the Court, Task Force members are inferior officers because they are subject to ample supervision by the Secretary in issuing recommendations that bind the public. Most importantly, the Secretary can remove Task Force members at will. His power to remove them flows from his power to appoint them, acting through the Director's authorities. And this Court has repeatedly recognized that at-will removal power is a powerful tool for control. Moreover, the Secretary can review Task Force recommendations and prevent them from taking effect. During the minimum interval period, he can direct the Task Force to rescind a recommendation, and he can replace Task Force members as needed to ensure that happens. In addition, he can require the Task Force to obtain his preapproval before they issue any recommendation at all. Given these collective powers of supervision, the Task Force cannot issue final recommendations that bind the public unless the Secretary permits them to do so. Respondents' contrary argument rests entirely on the statutory language providing that the Task Force shall be independent and, to the extent practicable, not subject to political pressure. But as this Court's cases make clear, that language does not create a restriction on removing the Task Force members, and it does not impose a bar on reviewing their recommendations. It certainly does not do so clearly enough to overcome the canon of constitutional avoidance, especially since the language itself contemplates some amount of political involvement. In all events, if that statutory language is the constitutional problem, then the solution is straightforward. This Court should hold that the language is unenforceable and severable. It is neither necessary nor appropriate to hold, instead, that Task Force members must be appointed by the President and confirmed by the Senate. I welcome this Court's questions. Before we get to the constitutional problems, what's the statutory authority to appoint the Task Force? So there are two sources of authority, Your Honor. The first is that under the Reorganization Act, the Secretary has the power to exercise all functions and duties of the Director, and the Director, under 299, has the authority to convene the Task Force. Isn't that an odd delegation? Normally, it would be the superior or the principal officer who would have the authority who would delegate it to subordinates. Well, it's not just a delegation, Your Honor. The Reorganization Act was in place when 299 was enacted, and so when Congress passed 299 and said that the Director could convene the Task Force, that meant that the Secretary could convene the Task Force. So you're using the word convene? Yes, Your Honor. Well, I think that normally connotes just calling a meeting or something. The Court was convened this morning. The Chief didn't appoint any of us. So I agree, Your Honor, that convene doesn't necessarily connote appointment, but there's no other language in the statute that specifies who will appoint these members. And in light of that, convene is most naturally read to mean convene and select the people who will serve on the Board. And that's clearly true before the ACA. Before the ACA was enacted, it's clear that the Secretary and the Director had the power to appoint these individuals. But appointment would not be an issue if they had no authority to require anything of others. It's just advisory. Well, not as a constitutional matter, but as a statutory matter. And I took your question to be where is the statutory authority to do this. Before the ACA, it had to be the case that the Secretary and the Director had the authority. It would not be constitutional for the President to select and the Senate to confirm these individuals before the ACA, because before the ACA, everyone agrees they weren't officers, and the Senate has no constitutional power to have any role in the selection of a non-officer. So the only way to construe the statute before the ACA is that the Secretary and the Director had the ability, and nothing about the ACA changed that. Can you give me an example of another body that's selected this way? Just with using the operative term convene, and that had been, and that the authority comes from through a subordinate to the principal. So not off the top of my head, Your Honor, but again, as a statutory matter, if we're just talking about how the statute should be construed, there is no other provision anywhere in the code that says who will pick these people. So the most natural way of reading a provision that says he shall convene the task force is to also select the people who will serve on the task force. What the task force does is fairly technical, medically and scientifically. I mean, is the Secretary really supposed to be in the position of going down the line and saying, yeah, I mean, I know you think we should use this particular thing with this atomic structure and all that kind of stuff, but I've got a different view on that. Is that a pertinent consideration in deciding whether they're adequately supervised? Well, Your Honor, the Secretary clearly has the authority to do so. Whether he chooses to exercise that authority or whether he in a sense chooses to defer to the expert judgment of the task force isn't relevant to the constitutional question. As a constitutional matter and as a statutory matter, he has the authority to review the recommendations. And that's the critical point for here. In addition, though, to take a step back, it's not just that he has the power to review the recommendations. He also has at-will removal power, which this Court has repeatedly said is a critical means of control. So even before you get to the question of if they issue a recommendation that he may or may not disagree with, is he going to get into the technical science of it, his mere ability to have at-will removal power is a powerful means of control, and that's what this Court has recognized in cases like Edmund and Frianderpuis. Mr. Lupan, on that score, the removal at-will argument the government makes hinges a lot on the assumption that the removal power comes with the appointment power, and that because the Secretary has the power to appoint, he therefore has the power to remove. The Fifth Circuit didn't address the antecedent question whether the Secretary indeed has the power to appoint. What do we do about that? Should we remand the case to assess that in the first instance? As Justice Thomas's questions point out, there seems to be some reason to question that. Well, so I guess what I would say is the following. There is certainly no removal restriction in the statute. So whoever it is who has the ability to— Whoever it is is an important question, though, right? So I take the point, Your Honor, but in terms of the question of is there a removal—at-will removal, there is at-will removal. I understand that, but you say the Secretary has that at-will removal power. That's a pretty critical premise of your argument, and it's an untested premise, one that the Fifth Circuit hasn't addressed and is being really addressed here for the first time, as you point out. And therefore, would you object to a remand for that consideration of that question? Well, we think it is fully briefed here, and we think the Court is capable of deciding. Well, you also cite Cutter and tell us we're not normally a court reminding us, as if we need it, that we're a court of review, not first view. So I won't object if this Court doesn't want to address that question, but we do think the answer is quite clear for the reasons with my colleague, Justice Thomas. I don't think the statute could plausibly be construed to vest the appointment in the President. I agree with that, but whether it vests it in the Director as opposed to the Secretary is an interesting question. Well, but that's a very easy question, because if you agree with me, it's at least in the Director. I understand you think it's easy. Counsel always thinks it's easy. But I'm pretty sure Mr. Mitchell doesn't think it's quite as – he probably thinks it's easy, too, just the other way. Well, to be fair – And no court's passed on the question. And so, again, I ask you, do you have any objection if we were to remand it? We don't, but to be fair, I don't even hear Mr. Mitchell to disagree with what I'm about to say, which is that the Reorganization Act of 1966 clearly vests the Secretary with all the powers of the Director. So if the Director has the power, the Secretary has the power. And that includes, doesn't it, subdivision B-2, which transfers to the Secretary the power to make such provisions as she shall deem appropriate, authorizing the performance of any of the functions of the Director? That's correct, yeah. And so if they have to convene something and no one else is appointing them, then the Director appoints them, right? That's right, and importantly – And removes them. Correct. And Mr. Mitchell's point about the Reorganization Act, what he focused on is whether the task force is an advisory board. But that's irrelevant to the question we're talking about right now, because that's a question about whether the task force powers have invested in the Secretary. The Chief asked you a question about supervising technical advice. That might be true of even us. We're given law clerks to help us on some of the things we don't know anything about. That's the nature of an agency, isn't it, that they hire experts to help the decision makers come to a conclusion? Right. That was the essential reasoning in holding a free enterprise fund, in fact, was that you would have bureaucrats but not be ruled by them. So yes, you have bureaucrats who contribute their expertise, but ultimately the final decision power is in a politically accountable head of an agency. And that word independent could mean that people on the task force have an obligation to give their independent opinion, but that doesn't mean that the Secretary has to accept it, correct? That's exactly right. And I would point this court to how this court has described administrative law judges in Butts v. Economist. That's an incredibly strained interpretation of the term independent. Are you independent of the president? No, Your Honor. I mean, he is counting on you to exercise a degree of independent judgment. But if somebody is removable at will, that person is not in any ordinary sense of the term independent. With all due respect, Your Honor, in Your Honor's opinion for the court in Collins, this court held that there are many statutes that use the phrase independent to describe an entity that is nevertheless not subject to a removal. All right. Well, maybe that's a little bit unfair. I mean, maybe I was wrong in Collins. But explain to me, you know, explain to me how somebody can be independent and yet subject to removable on the whim of the president.  As Justice Sotomayor said, it's independent in the sense that they have both the duty and the power to exercise their own best judgment. That doesn't mean that once they've done so, they're free from accountability. It just means that when they are making the decision, they have an obligation to exercise their best scientific judgment. Well, let's say they are removable at will.  And independent means something. It's like a precatory directive. Still, if the task force rates something A or B, then that's it. And even if the members are removable at will, the only way you can get around that is through some really jerry-built arguments. I don't think so, Your Honor. Let me give you the most straightforward of them. Under the statute itself, no recommendation takes effect until the secretary sets the minimum interval period. Right. And the minimum interval period is at least one year. So one year is more than adequate time for the secretary, if he doesn't agree with the recommendation, to direct the board to rescind it, the force to rescind it, and if the task force doesn't rescind it, to replace them with people who will. That doesn't seem very jerry-built to me. In addition to that, the secretary also has the power to create a preapproval requirement. Under 300GG92, he has rulemaking power to implement the statute, and he can say, before you issue any recommendations, submit it to me for my approval. And if and only if I approve it, can you issue it in the first place. Again, that's not all that jerry-built. If Congress really wanted these task force members to do the bidding of the secretary, isn't that an incredibly odd way to go about conferring that authority? No, because critically, we are not saying that Congress wanted the task force to do the secretary's bidding. We agree that the secretary cannot tell the task force to make a given recommendation. If the task force doesn't want to make a recommendation, it doesn't have to make a recommendation. Our point is simply that if the task force does make a recommendation, the secretary can block it. To use an analogy, it's like bicameralism. The Senate can't force the House to pass a bill, but if the Senate doesn't also agree with the bill, it doesn't become a law. Well, under the argument that you just made, why can't the secretary demand that a particular recommendation be made using exactly the same authority that you just outlined? What am I missing? The President says, I want you to make this recommendation. And if you don't make this recommendation, I'm going to remove you and replace you with somebody who will make the recommendation. So he can remove them, but we don't think he has the ability to force them to make the recommendation, because we do think that the phrase independence, and more importantly, the phrase that recommendations made shall be independent, in 299B4A6, we do think that that language does prevent that. And that makes perfect sense. If you take a step back and think about the statutory scheme, Congress was, as it often does, balancing competing objectives. On the one hand, it wanted the benefits of an expert body. It wanted recommendations that reflected their best scientific judgment. But on the other hand, it recognized that you need to have political accountability. And so the secretary can block it. And that solves the problem. It means that no final decision can be made that binds the public unless the secretary approves it. Doesn't that make it difficult for you in your inferiority argument? Because what if it's a big priority of the president to have these AIDS prevention drugs available? And the task force says, nope, not going to do it. And it doesn't seem then that that insulates them, especially if, you know, Justice Alito said, well, what if you fire him and say I'm going to appoint a task force who will approve these as preventative care? So two points about that, Your Honor. The first is I think this court has already resolved that question in free enterprise fund. So in free enterprise fund, this court held that once the PCAOB was made removable at will by the commission, they were inferior officers. Even though it was conceded, there was no statutory authority whatsoever for the commission to force the PCAOB. So that's enough, your position, because it was a little bit difficult to tell in your brief. You're saying that's enough. At will removal is all that's required. No, that's not what I'm saying, Your Honor. We've said that it's both the at will removal power plus the powers of supervision we've talked about. But critically, those are powers of supervision to block recommendations. You asked me, well, what about forcing them to make a recommendation? As to forcing them to make a recommendation, our point is you don't need supervision in that respect. Free enterprise fund already holds that as long as they're removal at will, the fact that you can't force them to take action does not make them printable. Go ahead. The last thing I was going to say, which perhaps Justice Kavanaugh was about to say, is you do still have that at will removal power in that context. And so, therefore, you do have some means of ensuring the recommendation gets made. It's just the means is replacing them if they won't do it. But you don't have statutory authority to force them to start, and free enterprise fund already blesses that arrangement. Why is it that in your brief, and again here, you're reluctant to say that the removal power is sufficient? Well, we just don't think the court needs to go that far. This court has always, in cases like Edmonds and free enterprise fund, taken an incremental approach to how it determines the line between inferior and principal officers. And we think in this case where there's both at will removal plus abundant means of back-end supervision, that's all this court needs to do. And to be candid, I think there would be harder questions if, for example, you had an officer who had the power to issue very important, very broad-ranging decisions that took immediate effect, couldn't be stopped on the back-end, and the only means of supervision was front-end removal. We haven't taken a position one way or the other on that, but I do think that that's a harder question. And that's why we don't think this court needs to go there. But that said, you don't have to go very much further than that on the facts of this case, because here, not only do you have at will removal, you have the critical difference that the recommendations don't take effect immediately. They don't take effect for at least a year, and within that year period, the Secretary has ample time to ensure they never take effect. And so those two alone, we're perfectly comfortable saying that that's sufficient for inferior officers. Can I go back to Justice Gorsuch's questions about at will removal, because he at least suggested that we may not have at will removal here. And I guess I'm wondering about the presumptions in our law related to the removability of officers. So do we really need to send it back for resolution of that if the law presumes that where there is no statement regarding this, at will removal is at play? So again, Your Honor, I agree. I don't think there's any colorable argument that there's a removal restriction here. The only colorable dispute is whether there's actually an appointment. Right. And what does our law say about that situation? I mean, part of the problem here, I think, is that we are talking about a statute that doesn't speak to particular things. So to the extent that the law doesn't speak to the removability of these people, I thought our presumption was that we do have at will removal. Yes. The presumption is that there's at will removal by whoever has appointment authority. And I think the question with Justice Gorsuch is, who is the person who has appointment authority? I don't think there's any serious dispute that whoever it is has at will removal power. And so do you think we need to get to the bottom of who it is in this case?  Either here or on remand, of course, we need to be right that the secretary does have appointment authority to defeat their claim. We think that the secretary does have appointment authority. We think it's clear enough from the statute. Who would it be if it isn't the secretary? Well, in my view, the only other colorable reading of the statute is that it would be the director. Because the statute says the director shall convene. But, of course, that would render the statute unconstitutional. Because the director is not the head of a department. And so that's yet another reason why you should read the statute the way we suggest, that when it says the director, under the backdrop of a statute that vests all powers of the director and the secretary, the secretary has the power. My friend on the other side, his move is to say, no, no, no, it's the president who has the appointment authority confirmed by the Senate, invoking the backdrop principle that under the Appointments Clause, presidential appointment and Senate confirmation is the default rule for appointment. But the reason that doesn't work, as I was discussing earlier, is before the ACA, these were not officers. And if they were not officers, it would be unconstitutional for the Senate to have any role in their confirmation. So you cannot read the statute to have presidential appointment and Senate confirmation before the ACA, and nothing in the text of the statute changed after the ACA about who does the appointing. I think you said earlier that at-will removal gives the secretary the power to influence the content of recommendations before they're made. Is that accurate? I think that's correct, Your Honor. And then because that comes from the at-will removal power, correct? Correct. And how is that then square with the word independent? Because it's still the task force ultimate judgment that matters. Yes, they can consider what the secretary wants. They may be even influenced by the fact that if they don't do what he wants, they might get removed. But it's still ultimately their call as a statutory matter. So I would point, for example, the benefits review power. That's an odd definition of independent, I suppose. Does independent in this context have any different meaning because the folks in question are not government employees, that they have outside affiliations, they're employers or wherever they're affiliated with? Well, we do think that they are officers of the United States, so we do think they're government employees. But your point that they have other affiliations as well, we do think that's part of why. They're not paid, right? Yes, they're volunteers. But we do think that that's part of the reason why it uses the phrase independent, to underscore that it's not just that they have the power to make the judgment based on their best scientific judgment. They have the duty. But I hear you as not relying on the notion that independence in that provision means independent from, you know, your university or your think tank or something like that. That you think that the word independent here does mean independent from political influences and particularly from presidential ones. Well, in making the recommendation, we think that they have to exercise their best scientific judgment free from all of it. They shouldn't do what, you know, their university tells them to do. They shouldn't necessarily do what the secretary tells them to do. They should exercise their independent judgment based on the science. But the secretary might say, and I think you acknowledge this, if you don't make the following recommendation, I'm going to fire you. That's right. And so the analogy I would give you. That's okay, right? Yes. The analogy I would give you is the Benefits Review Board in the Department of Labor. So the Benefits Review Board in the Department of Labor is an adjudicatory body that is at will removable. Because they adjudicate cases, they should adjudicate cases based on their view of the facts and the law. But it's true that if the secretary tells them, look, you come out one way, you're going to get fired, they might get fired. But they should still exercise their independent best judgment when they issue the ruling. What is this language, to the extent practicable, doing? So, look, I think that that, it's not entirely clear, Your Honor. But I think that, if anything, it underscores our point that you should not read this statute, especially in light of constitutional avoidance, to say that the secretary can't exercise the types of review we've suggested. I mean, it does suggest that Congress was thinking in some circumstances it would not be practical.  And what circumstances would Congress be thinking that about? Well, at a bare minimum, the circumstances where the statute would be unconstitutional if the secretary couldn't engage in that level of supervision. So, again, I think that that language just underscores the constitutional avoidance point, that the limited forms of review on the back end that we've emphasized have got to be permissible under that statute, both because it has that language in it and because the canon of constitutional avoidance says you should read it that way. And, again, going back to the adjudicators, it's not just the Benefits Review Board. More generally, under the APA, the Statutory Scheme for Adjudication has exactly this feature to it. You have adjudicators who are tasked with exercising independent judgment, but their actions on the back end can be reviewed. Yeah, I understand the analogy to adjudicators, and I thought that's what was in your brief, but normally you wouldn't say with adjudicators that the supervising officer can influence the content of the adjudication. Well, yes. They can only review the adjudication after it's been made. Well, but they also, you know, as the Benefits Review Board says, you can also influence it. You have that low removal, and every one of these adjudicators knows that they're acting under the shadow of that. So, you know, does that affect them? Perhaps, but their duty and their power is still to make the decision based on their best judgment. Perhaps one way of making the point is— So you're making the analogy, though, to adjudicators here, right? Yeah. You think that's a good analogy, and because their recommendations can be reviewed before they take effect, it's similar to all the adjudication cases where there's been supervisor review of the ultimate decision. That's right. And one way of making the point is for these individuals, if the secretary tells them to do something and they don't do it, they do the opposite and make a different recommendation. That's not insubordinate, right, because they have statutory power to make their independent best judgment. For most inferior officers, if the president or your agency tells you to do X and you do Y, that is insubordinate. So that's what the language does. Now, that doesn't mean that you need to be protected from removal on the back end. You can be independent, make your own statutory judgments, but then have to face the consequences if the agency disagrees with those. Thank you, counsel. Justice Thomas, any further? Just briefly, what role did you say the Reorganization Act played with respect to the task force? So several roles. The first is on the appointment question, we think that the Reorganization Act is a way to confirm that the secretary has the direct appointment authority with respect to the task force members. Now, is the task force, I thought the reorganization dealt with agencies within HHS. That's correct, Your Honor. Is the task force an agency? We think the task force is within the AHRQ and within PHS, so it's within. So what supports that? Well, it is an entity that is convened by the public health service, selected by the public health service, supervised by the public health service. Is it structurally or statutorily designated a part of an agency? Again, there's not anything that says they are or aren't, but I think the clear best reading of the statute is when you have an entity that's convened by the public health service, selected by the public health service, supervised by the public health service, and supported by the public health service, it's part of the public health service. Justice Alito? No. Justice Sotomayor? There are any number, I think we mentioned them in the opinion in Collins, that are deemed independent, but the president still has the power to remove the leadership, correct? Correct. I know that it seems to me that if the task force members are not paid, that that means that they would take their oath more seriously, wouldn't it? Because they're not afraid of losing a government job. I'm not sure I would psychoanalyze them that way. No, no, but my colleagues are. They're saying that because they could be removed, they're going to automatically ignore their statutory duty. Look, I think that they will exercise their statutory duty. Which is to give a recommendation independent. But I wouldn't say that means that the removal power isn't a means of supervision and influence. Obviously, but I go back to the examples I've made, which is my law clerks, I ask to give me their independent judgment of what an answer should be, and they'll tell you there are sometimes, a lot of times, I don't accept it. And I certainly have the power to fire them, and they still do it. Correct, Your Honor. All right. That's the nature of asking people to advise you, correct? Yes. Which some advice you'll accept, some you won't. And you can choose to ignore your obligation, but that's not something we presume you'll do. Correct. Thank you. Justine? Justice Gorsuch? So I understand that you agree that the Secretary cannot force a recommendation, but lean heavily on the fact that the Secretary can stop recommendations. I think your best authority for that may be Section 202. If I'm correct, you tell me if I'm wrong. And what in 202, if it is your best authority, gives the Secretary that power? So it's not quite, Your Honor. The basis for the distinction is coming from 299B486. We think the statutory language says that they shall be independent in the recommendations made. And so we think that means that they get to make their recommendations, but that doesn't necessarily mean that those recommendations have to take effect. Right. Now, the statutory power to block them, we agree, is both 202 and the Reorganization Act. Okay. And focusing on 202 in particular and putting aside the Reorganization Act for the moment, what in that empowers the Secretary to stop a recommendation from taking effect? Well, so the Assistant Secretary for Health, who is supervised and directed by the Secretary, shall administer the entire public health service. And the ability to administer an agency is a language Congress generally uses to describe that an agency has power to control the whole agency. As we cited in the reply brief, that's the language that allows the Secretary of State to administer the entire State Department, is the Secretary of State shall administer. So we think that if it weren't for B486, there would be no question at all that the Assistant Secretary and therefore the Secretary could direct what the task force does, root and branch, from front of end. Because of B486, we acknowledge that the specific governs the general and they have to be independent in making their recommendations. But that doesn't mean that they can't block them. Okay. Thank you. Justice Carlin? I might have misunderstood that, but I thought you were also relying on 300 GG13B1 for the authority to reject a recommendation? Well, that gives the authority to delay the effective date, but then you need some other source of authority to then make the recommendation go away. So that's just the when, that's not the weather? Correct. Okay. Thank you. Justice Beirich? I just want to clarify what you mean by the word independent or how you understand it. I mean, Mr. Mitchell is reading it in a very maximalist way. You are taking a middle road. I wonder, I mean, I was thinking of a law clerk example myself. Does independent even have to mean independent of the Secretary? Because it seems to me that I could give my law clerk some advanced direction. I could say, I want you to make an independent judgment. I want it to be free of political influence or free of outside influence. And by that, I would mean outside the court. I might mean outside of our chambers. But I might not mean for it to be apart from me, not independent of me. And I could even do that ex ante. I could say, give me your best understanding of this statute, which your best take on its interpretation, seen through the lens of the way I interpret statutes, the way I see law. So not entirely independent. If you see statutes, I mean, so, you know, I don't put a huge amount of stock in legislative history. So if I say, you know, give me your best read on a statute and that's what they bring back, that's not going to be very useful to me. So they're not independent of me or my instruction, even though I could say they were independent in a very real sense of the word. But I take it that you don't adopt that view. So, Your Honor, we could have taken an even narrower interpretation of independence along the lines you're suggesting. We thought the better reading of the statute in light of its context is the one we have articulated, where there is independence in the recommendation made even vis-a-vis the secretary. Even vis-a-vis the secretary. But it doesn't block the secretary on the back end. Of course, if you want to interpret the statute even more narrowly than that, then that just makes it even harder for Mr. Mitchell. Well, I mean, I think the fact that you could interpret it and I think give content to the word independence in an even narrower sense. I mean, you have a more middle of the road. And then, as I said, I think Mr. Mitchell has a really maximalist view. I mean, at a minimum, I think it shows that the maximalist view isn't necessary. I think that's right, Your Honor. And, again, ultimately, I think one way of thinking about this is this is an appointments clause challenge. So the question is whether there's adequate supervision. The court doesn't necessarily need to get into the exact level of what independent means and does it mean what you said or what I said. All the court really needs to say is there's enough supervision that these are properly understood as inferior officers. That's all you need to do to reject the claim here and reverse the decision below. Thank you. Justice Jackson? And we also can rely on the constitutional avoidance. I mean, you mentioned it a couple of times, so let me just invite you to explain how that would work in terms of deciding who has the better reading of independence. Sure. And, you know, we do think we have the better reading, but if you thought there was ambiguity here about what the scope of independence was or whether the appointment power was vested in the secretary rather than just the director, this court obviously reads statutes to avoid constitutional problems rather than create them. So you shouldn't read the phrase independent to impose a removal restriction that's not there, to impose a bar on review that's not there, to impose restrictions on who can appoint that aren't there. You should read the statute to reinforce that the secretary has adequate supervision so that the statute as written by Congress can continue to operate. And Mr. Mitchell's only real response to all of that is, again, to say, well, the statute's actually perfectly constitutional on even his theory because he thinks the president can appoint and the Senate can confirm. But that doesn't work as a statutory matter for the reasons we discussed. And once you take that off the table, his reading does create serious constitutional problems with the statute that you can avoid if you adopt our reading. Thank you. Thank you, counsel. Mr. Mitchell. Mr. Chief Justice, and may it please the Court. The Court of Appeals correctly held that task force members are principal officers who must be appointed by the president and the Senate as required by Article II. They cannot be inferior officers because their preventive care coverage mandates are neither directed nor supervised by the Secretary of Health and Human Services or by anyone else who has been appointed as a principal officer. The governing statutes make this clear. Section 300GG-13A1 gives the task force alone the prerogative to impose preventive care coverage mandates on insurers, regardless of whether the secretary approves or disapproves a task force recommendation. And Section 299B-4A1 and A6 require that task force members and their recommendations be kept independent and, to the extent practicable, protected from any type of political pressure. These statutes cannot coexist with a regime in which the secretary can overrule the task force coverage recommendations or deny them binding effects. The Court also has no authority to sever Section 299B-4A6 as proposed by the government. The remedy prescribed by this Court must take the form of a final judgment to be entered by the district court on remand, and a federal district court has no authority and no ability to formally revoke or cancel a statutory provision when entering judgment for a party. More importantly, a remedy from this Court must, to the maximum possible extent, respect the will of Congress as reflected in its enacted laws. Congress has chosen to create an independent task force and shield it from political pressure, and the plaintiff's proposed remedy honors that congressional decision. The government's proposed remedy would rewrite the statute into something unrecognizable by the Congress that enacted the ACA, and it is not even clear that Congress would have approved a regime in which politicians, rather than an independent task force, decide the preventive care that insurers must cover. I welcome the Court's questions. Mr. Mitchell, your argument depends on a much broader reading of independent than the government's. Would you address the government's more limited view of independence? Well, there are two different words in play here. It's not just the word independent, which appears in both Section 299B-4A1 and A6. It's also the phrase in subsection A6 that says the task force is to be protected from political pressure to the extent practicable. And we don't see any way that statutory language can be squared with the regime envisioned by the government, where the secretary can come in and influence the task force decisions on the front end, which Mr. Mupon once again acknowledged in oral argument. He believes the secretary can do that. And we don't see how that can be squared with the actual statutory language. Mr. Mupon suggests invoking the canon of constitutional avoidance in a way to bend subsection A6 to make it more accommodating of his view of secretarial power. But the constitutional avoidance canon is inapplicable here for many reasons. Number one, Mr. Mupon's proposed reading of subsection A6 does not avoid any of the constitutional problems that occurred. Under the government's interpretation of subsection A6, the task force members are still principal officers because they have unreviewable discretion when deciding not to recommend A or B ratings on a particular preventive care service or when they decide to withdraw a previous A or B rating that they have conferred prior to their decision to withdraw. That means they have final decision-making authority that's not subject to direction and supervision. I'm sorry, I don't understand that. Can you help? Yes. What do you mean? They have unreviewable authority? First of all, I thought there was an interval period that the statute imposed. That's right. What function is that if not to have some consideration of what these recommendations are? That's one question.  And then another is what do you mean about them having unreviewable discretion not to make a recommendation? So the test for principal officer status is whether the officer in question is directed and supervised in his decision-making. On the government's reading of section 299B-4A6, if the court were to adopt that view, the secretary would have the ability to overrule task force decisions to confer A or B ratings on preventive care. But the secretary would not have any authority to overrule the task force. But why is that? Why is that? I mean, they make a recommendation and they have rejected other options. The secretary puts into place the interval period, reviews what they did and didn't do, and says, I'm going to remove you as a result. I don't like what you did or didn't do, and you're out. That doesn't make them into inferior officers. And Arthrex holds as much because Arthrex acknowledges situations in which a principal officer can, through informal means, influence the decision-making of a subordinate official. And Arthrex says that's still not good enough. There has to be a formal authority to review the decisions that are being made. But what about all the adjudicatory cases? Mr. Mufon says this is more like Edmunds. This is independent in the sense that people are making recommendations using their own best judgment, but they're still at will removable, and we found that is okay. But they also have all their decisions subject to review by a principal officer. What this court said in Edmund was that the reason those judges were deemed inferior was because they could not issue any final decision on behalf of the United States without being allowed to do so by a principal officer. Mr. Mufon, I take that point, and the government concedes that a decision not to list something is unreviewable, but says that Free Enterprise Fund blessed that arrangement already. What are your thoughts? The difference in Free Enterprise Fund was the SEC had all sorts of supervisory authority over the PCAOB, the Public Company Accounting Oversight Board, that is not present here. The SEC could review and alter any rulemaking done by the board. The SEC could review and overrule any sanction that was being imposed by the board. What about a non-action by the board? Well, if you look at page 504 of the court's opinion of Free Enterprise Fund, it lists all the ways in which the SEC had these oversight authorities. And this is not, with all respect, Your Honor, this is not a situation of non-action. When the task force decides to issue a C, D, or I rating rather than an A or B rating, that is action. It's not inaction. If the task force decides to withdraw an A or B rating that it previously conferred, that is also action rather than inaction. So the government's brief tries to rely on the act-omission distinction. It just doesn't hold up here. There will be situations in which the task force can take affirmative actions that cause a certain type of preventive care not to receive the A or B rating, and the government concedes that's unreviewable. So that means there's still principal officers. But there's a second problem as well. Even if this court were to think that task force members become inferior officers under the government's interpretation of the statute, they are still unconstitutionally appointed because Congress has not vested the Secretary of Health and Human Service with the authority to appoint the task force. And the Court of Appeals did not reach this question, as Justice Gorsuch noted during the questioning of Mr. Bupont, but the court would have to conclude that there was vesting of this authority in the Secretary before it can say that they're constitutionally appointed now. Should the court remand to the Fifth Circuit to let them address that for the first time? The court should not remand unless it disagrees with our principal officer argument or if the court wants to impose the severance remedy suggested by the government. So if we disagreed with your principal officer argument, you would say, say that you disagree with our principal officer argument, but then remand to the Fifth Circuit to give them a crack at the appointment? I think there would have to be a remand in that situation, Justice Barrett, unless the court thought the issue was so open and shut. Why do you think the Fifth Circuit didn't reach it? I saw that this was a huge part of the briefing before the Fifth Circuit. It was. It seems to me that it wasn't merely an assumption, it was a conclusion. In their whole reasoning, the conclusion was... Well, if I can defend the Court of Appeals for a moment, Justice, they did not need to reach that question because they concluded, number one, the task force members are principal officers, so there's no need to decide whether Congress vested the appointment authority in the secretary. You only need to reach that question if you think they're inferior officers because even inferior officers still need to be appointed by the President and the Senate unless Congress has affirmatively opted out of the default rule. But if you think they're principal officers, you don't need to reach that question at all. The second reason I think the Court of Appeals refused to rule on it was because they rejected the government's proposed severance remedy. And the Court will also need to address this point if it wants to sever Section 299B-486 because the severance remedy proposed by the government is premised on the idea that the secretary has constitutional authority vested by Congress to appoint the task force. If the secretary doesn't have that power because Congress hasn't vested the power in the secretary, then the government's severance remedy does not work because the inferior officers would still have to be appointed by the President and the Senate even if they're considered inferior officers. I guess I don't understand why you're separating the principal officers and the removability. I thought whether or not they are principal officers, in part, turns on whether or not they are removable at will. You seem to have separated them in a way that is confusing to me, so can you help? Well, we don't mean to separate the inquiry. Removability is a factor to consider. It's not the be-all and end-all of principal officer status, and this Court has never held that that is a handicap. You said the Fifth Circuit didn't have to really go into appointments or removability because they determined that they're principal officers, and I thought you can only reach the issue of whether or not they're principal officers by examining such things as how they are appointed and how they are removed. The question Justice Sotomayor asked was, why didn't the Fifth Circuit rule on whether Congress had vested the Secretary of Health and Human Services with appointment authority over the task force? That was the question I was answering, and the Fifth Circuit had no need to reach that issue, and this Court also has no need to reach this issue unless it disagrees with our argument on principal officers or unless the Court wants to impose the government's proposed government statute. In the reply brief, the government came back with Hartwell. Do you want to address that case? Yeah, Hartwell's not on point because in Hartwell, the statute required the Secretary of the Treasury to specifically approve the appointment of that inferior officer. So Hartwell concluded that was enough to vest the appointment power in the Secretary of the Treasury. We don't have anything like that in these statutes. Nothing in any of the statutes here requires the Secretary of Health and Human Services to affirmatively approve the appointment of task force members. And I guess the government comes back there and says, but they have broader authority to, the Secretary has broader authority to carry out the provisions, 299A and the RE-ORG-AC, they say those together give the Secretary the authority to essentially stand in the shoes, I suppose, would be one way to characterize their argument, of the director. Do you want to respond to that? Sure. The Secretary is allowed to appoint the task force. We acknowledge that. Anyone is allowed to appoint the task force under the statute. The question is under the Constitution who can appoint. The statute doesn't say anything about who appoints. So anybody can appoint them. The AHRQ director appointed one at a time. Well, if you lose your principal, I think that's important. If you lose your principal officer argument, so that's the premise, not saying you will, but if you do, and you just said then you can read the statute to allow the secretary to appoint, that's kind of the end of it. No, I don't think so. That's not vesting. Anyone can appoint under the statute. The Secretary of Energy could appoint. The president could appoint. The AHRQ director could appoint. Someone from the private sector could appoint. The statute doesn't say anything at all about who appoints. No one is vested with the authority because the statute takes no position on who appoints. So, okay, and I think I understand your argument. Something has got to speak specifically to appointment. The general authorities in the Reorganization Act and 299 are not enough. That's right. And that's why Hartwell is different. That's right. We have a specific reference in the statute in Hartwell to the Secretary of the Treasury who must approve the appointment before it can take effect. They don't have anything remotely like that. Is your view that Congress actually wrote a statute without saying who should appoint? Yes, because they didn't need to vote. Even thinking that it was saying who should appoint.  That Congress was leaving this, like, just to the, whatever they come up with. Yes, because this was initially established as a purely advisory body. So it didn't matter under the Constitution who appointed them. The Appointments Clause didn't apply to the task force when it was first created because it only had advisory powers. But even a purely advisory, to pick up on Justice Kagan's point, it's unlikely that Congress just was throwing it out there in terms of who would. I mean, usually Congress thinks that it does things like that, right? I mean, it would be an odd statute. I doubt you could find another where Congress has set up a board and said, you know, just not said who should make up the board. All they said is that the AHRQ director shall convene the task force. And convene does not mean appoint, as Justice Thomas mentioned earlier. No, but in the absence of anything else, it would be a natural reading to say when you're looking at one person and saying he can convene the board, that means, and there's nobody else out there to actually pick the board members, that means he should also pick the board members. He's certainly allowed to pick the board members, Justice Kagan. What we're saying is the statute doesn't forbid other people from appointing. The president could appoint the members of the task force. He could have done that prior to the ACA, and he can do it after the ACA. In fact, we think he's constitutionally compelled now after the ACA to appoint them with the advice and consent of the Senate. There is no statute that forbids the president to appoint. Well, if convene does mean appoint, then we do have a problem on an inferior officer theory, don't we? There is a problem, yes, because now we have a statute that's requiring the appointment of a principal officer by someone who's not even a head of department. Yeah, but even if you could lose that argument again, and we're talking about inferior officers, Mr. Mitchell, if we read convene to mean vesting the appointment power in the director, that's a problem. That's a big problem. It means the statute is unconstitutional, and the court should, therefore, reject any interpretation of the word convene that makes it synonymous with appoint because that would create not simply a constitutional question but a constitutional violation. That's where you pull in 299A, which says the secretary can carry out, or shall carry out the statutory provisions acting through the director. I mean, that's their response to that. Maybe that works, but again, the question Justice Gorsuch was asking me is if A-1 is construed to vest the appointment power in the AHRQ director, even the government would agree with that. Yeah, that alone would be a problem. I totally agree, but then maybe you have to figure out how to fix that problem, and one way that the government points out is, well, the statute itself essentially fixes that problem because it says that the secretary can carry out the duties of the director. Maybe that works, but the question, again, under the Article 2 is where has Congress vested the appointment power, and if Congress has vested it in the AHRQ director, who is not even a head of department, the AHRQ director can't even appoint inferior officers, and the government agrees with us on this much. One thing we all agree on is that the task force was unconstitutionally appointed for the 13-year period that began in March of 2010 when the Affordable Care Act was first enacted into law through June of 2023 when Secretary Becerra reappointed the task force. Everyone agrees that those were unconstitutional appointments, and everyone agrees, I would think, that the recommendations that issued during that 13-year period cannot be enforced until the task force reissues those recommendations after receiving a constitutional appointment. So it's hard for me to understand why the government is suggesting a remedy of severance when at the very least we should be entitled to an injunction that restrains the enforcement of previously issued task force recommendations. I don't want to belabor it, but I think to Justice Gorsuch's point, which is a good one, they're saying constitutional avoidance would say, well, don't read it to be the director in isolation. Read the other provisions which give the secretary authority over the director so that the secretary can do the convening slash appointing, and that solves the constitutional problem. Justice Kavanaugh, I agree that the secretary is allowed to appoint the task force, and we've never disputed that. And so it's vested by law under Article II. That's your key point. Right. Vested by Congress. Where has Congress by law vested that authority? And if the statute is vesting the authority in the AHRQ director, that is unconstitutional, even if they're inferior officers, and that's why the court, I think, has to reject an interpretation of the word convene that equates it to appoint. And you're saying as well as I understand it that if Congress didn't vest it in the director but vested it in the director and the secretary and 15 other people in between, that's a problem, too. It's a problem, too, because these are principal officers. So Congress, even if they're inferior officers, would it be a problem if Congress vested the power to appoint an inferior officer in the secretary plus 15 people? Is that permissible? I'm not sure. At the very least, if they have vested it in the secretary, and they also go on to say in the statute, but other people can also exercise the power, it still has to be, I think, ultimately a head of department that exercises the power. But what if it's vesting it in the director subject to the supervision and control of the secretary? So there aren't 14 other people wandering around. It's in the director because he's the person who convenes, subject to the secretary because the statute otherwise gives the secretary supervisory control over the director. I don't think that's good enough, Justice Kagan. I think the statute would have to say the secretary must affirmatively approve the assistant secretary or the director's recommendation. That was Hartwell. If the statute went that far, I would agree. But doesn't that prove the point? There are all of these questions, and shouldn't we leave this to the Fifth Circuit on remand if you lose the principal officer point? Yes, I do believe it should be remanded if the court thinks it necessary to reach this question. We don't think the court should reach this question, or any court should reach this question. Just to stay on this point, and Justice Kagan's point, what if it said secretary or director may appoint? It says the secretary or director may appoint, then Congress has vested the appointment authority in a head of department, but we would still say that's unconstitutional because they're principal officers. So if the court disagrees with us, if they reject our principal officer argument, that's the question that would have to be resolved by the Fifth Circuit on remand, Justice Kavanaugh. It's a curious thing. Just to continue to say, it's vested in two places. One is constitutional, and the other is unconstitutional. But at least Congress has made the vesting in a head of department. And I think the head of department would have to exercise that authority. What if he didn't, though? What if the secretary didn't exercise that authority, but the other person did? I mean, we've never had a case like that. I don't think there has, but I think the secretary would have to approve the appointment. So you're saying that under any circumstance, vested in 15 different places, but ultimately for it to be constitutional, it has to be the secretary who acts. You're requiring, if I have an employee and they do something, and if I don't like it, I tell them, and if I like it, I leave it alone. You want the secretary to sign a piece of paper that says, the director took this action, I saw the task force, I saw the recommendations, I saw him leaving them in place, and that doesn't mean that the secretary agrees? No, we don't think the secretary has the authority to do any of that. You think that the Constitution requires him, giving Justice Kagan's example, that the director is subject to the supervision of the secretary? Is Your Honor's question asking whether the secretary has to approve the task force's recommendations, or is Your Honor asking about whether the secretary has to approve an appointment to the task force? Both. This is a hypothetical I was being asked from Justice Gorsuch. If there's a statute that vests the appointment power in the secretary and another person, the secretary needs to sign off on the ultimate appointment if these are inferior officers, and we reject that premise, in order for the appointment to be constitutional. All right. I'm having a difficult time understanding this. You accept Hartwell? You just say this doesn't fall within Hartwell? That's right. And again, all these issues probably should be remanded in the Fifth Circuit if the Court thinks it necessary to reach this point, because, number one, the Fifth Circuit didn't resolve the question below. There's very little briefing on this issue. We barely discussed this in our brief. There's a little bit of a more robust discussion in the Solicitor General's reply brief, but also... Two pages. Yeah. This Court has said many times we are a court of review, not a first view. So I don't think it would be prudent for the Court to rule on that question in the first instance if it thinks it necessary to reach that. And, of course, we believe it's not necessary for the Court to reach that. Can I ask you about your principal argument, the independence point? Yes. I mean, I guess one thing that I'm struggling with is, you know, as I was suggesting to Mr. Mupan, your interpretation is very maximalist. And, you know, normally, as Mr. Mupan said, we try to construe statutes to avoid constitutional questions and not create them.  And I feel like, you know, there is a way, and during the call with your friend on the other side, a lot of us were asking, you know, ways that you can construe independence more narrowly. Why wouldn't we do that for the sake of constitutional avoidance? I mean, I assume you're going to say, oh, it's not plausible. Well, that's part of the answer. I mean, it's not just the word independence, but it's also the provision that says that the task force members have to be protected from political pressure to the extent practicable. So that is a maximalist interpretation that's in the statute itself. That language appears there. But I think, secondly, the statute is... I mean, to the extent practicable actually seems non-maximalist to me. It suggests that there are limits, and we understand that sometimes it's not going to be possible. It may not be possible. You can't censor people from talking, for example. And if you really wanted to make them completely immune from political pressure, you might have to sequester them the way jurors get sequestered during a trial and not allow them to read the newspaper or something to that effect. It's not saying that we should go to these types of extreme measures. But the reason I don't think constitutional avoidance is even relevant here, Justice Barrett, is because the statute is constitutional no matter how it's construed. Even if the court were to adopt our view of the meaning of independent, there is no constitutional problem with the statute. It does not violate the Constitution for Congress to give the task force authority to make these preventive care coverage decisions as long as the president and the Senate appoint them as principal officers. I don't mean to interrupt. Yes, please. Just coming from a different Article 2 direction, we usually don't interpret statutes to create independent agencies without some indication that's stronger than what we have here, that this is really protected from presidential or someone else's secretary, head of department removal power. I don't know how the language could be stronger about Justice Kavanaugh. It's not just the word independent, which is what we had in Collins against Yellen, and the court said that's not good enough to make it independent from presidential. Well, it could be stronger if it had foreclosed protection, and it could be stronger if it didn't have the phrase that Justice Kagan identified to the extent practical. Those are two big differences from what you would see normally with an independent agency. Normally with an independent agency, correct me if I'm wrong, the statutes usually say the president, by and with the consent of the Senate, shall appoint. Right. And that's usually in the statute. It is. That's right. Because it has to be in the statute. Otherwise, there's no prejudice about it. And many of them, although not all, say the foreclosed removal protection. Right, but I think the reason we don't have... Right, so all that's missing here. That's true, but I think it's easy to explain why it's missing. This was initially established as a purely advisory body that had no real powers. So that's why they didn't initially say in the statute that the president has to appoint these people with the Senate's advice and consent. It was only when the Affordable Care Act, for the first time, gave the task force real powers as officers of the United States. Well, point taken as to what the history is, but still, I mean, we don't go around just creating independent agencies. More often, we destroy independent agencies. You know, the idea that we would take a statute which doesn't set up an independent agency and declare it one strikes me as pretty inconsistent with everything that we've done in this area. In terms of construing statutes to maximize presidential influence? Yeah, I mean, we've basically said we're not going to read something as putting restrictions on removal power unless it puts restrictions on removal power. But the problem here, it's not really a question of removal power, Justice Kagan. The test for principal officer status turns on whether the secretary can direct and supervise the decisions of these task force members. It's the question whether the principal officer… Well, why isn't removal power enough? Suppose that there were clear at-will removal power here. I mean, we've gone to such lengths to say that that's pretty much… Somebody said it's not the end-all and the be-all. I think Mr. Mupan said that. And I don't know if you read this court's decisions, it seems often to be the end-all and the be-all, that the court has suggested on many occasions that removal power is really the essence of control. If you have it, you have control. If you don't have it, you don't have control. Now, as you know, I'm sure, on a number of occasions, I've said that that understanding of removal power is not realistic, at least in certain contexts. But the court has said it again and again. So why doesn't it get you, if not 100% of the way there, in a context like this, pretty near there? I think that argument would have more force if it weren't for the opinion in Arthrex. And if we were litigating this case 10 years ago before the Arthrex opinion, I think that would have a lot of… That would be a very powerful reason to say these could be inferior officers. But if you look at the Arthrex opinion, pages 15 and 16, Arthrex catalogs all the ways in which the PTO director can influence the decision-making of these administrative patent judges in an informal way, without the formal ability to review their decisions. And then the court says, not only is that not good enough, it actually says that aggravates the problem. This is not the solution, it is the problem, because it blurs the lines of accountability and it undermines the transparency that the Appointments Clause is supposed to provide. Again, if Arthrex wasn't there, I think we could have an interesting discussion about whether the test for principal officer status should be this formalistic test that Arthrex sets forth, or whether we should have more of a hard-nosed, legal realist look at the actual powers that the secretary can exert to influence the task force. But Arthrex really, I think, makes it hard for that argument to get off the ground. Mr. Mitchell, can I ask you about the interval? Because we don't just have potential at-will removal power here. We have something in this statute that seems to me to be fairly unusual, which is the requirement that the secretary establish this minimal interval after the recommendation is made before it comes into effect. So can you speak to why that doesn't have some indicia of secretarial control that we can look to when we try to understand the relationship between the secretary and these members and their recommendations? I think it has the opposite implication, Justice Jackson, because 300GG-13 specifically addresses the secretary's role vis-a-vis the task force. And as Justice Kavanaugh suggested earlier, it only allows the secretary to determine when these preventive care programs are in effect. No, I understand, but it does so for a reason. I mean, if you're right that these are principal officers who are making binding recommendations, I guess I'm struggling to understand what the point of deferring them or allowing the secretary to intervene and defer them for at least a year, what is the point of that? The point of that is it's very hard for insurers to change their coverage requirements in the middle of a planned year. So the minimum interval is set at one year. That's the minimum. So the insurance companies can plan ahead. Congress could have done that by statute without the secretary being involved. They gave the secretary some authority to establish an interval. So the secretary is doing work. Mr. Moubon says during that interval the secretary can not only delay the recommendations but can also, in his view, take some steps as to the constitution of the task force, perhaps even in communication with them regarding those steps having been done because they made certain recommendations with respect to which the secretary disagrees. So I guess I'm just trying to ---- I mean, it doesn't necessarily suggest that really this is only a time-related thing. The secretary is getting involved. He's making decisions. Why doesn't that give us some basis for interpreting this to be a statute in which there is secretarial control? Well, we dispute all those claims Mr. Moubon made about what the secretary can do during that minimum time interval because the statutes guarantee the task force's independence. What Mr. Moubon is describing where the secretary can put pressure on the task force to pull down a previously issued A or B rating is not consistent with the statutory guarantee. But the statute doesn't have specific blocks. And so I guess I'm going back to this notion of how should we be reading the statute. You dispute that the secretary can do all of those things, but the statute doesn't say he can't. And so why would we read the statute to prevent the secretary from exercising the control that is necessary to make it constitutional in this situation? Because it doesn't make the statute constitutional for all sorts of reasons. May I answer, Mr. Chief Justice? Sure. It doesn't make the statute constitutional, Justice Jackson, because number one, there are still principal officers because they have unreviewable discretion when it comes to decisions not to impose an A or B rating. Number two, even if your Honor's proposed reading of the statute makes the task force members into inferior officers, Congress has not vested the secretary with appointment power over the task force, so they're still unconstitutionally appointed. And number three, your Honor's proposed reading of the statute still does not fix the problem that occurred from March of 2010 to June of 2023 when even the government acknowledges the task force was unconstitutionally appointed during that 13-year window of time, and all the preventive care coverage mandates that were issued during that time should not be enforceable until the task force members receive a new appointment that is constitutional and they reissue the A or B ratings in response to that constitutional appointment. Thank you, Counsel. Justice Thomas? Justice Alito? Would you comment on Mr. Mupon's argument that a distinction can be made under his understanding of what the secretary can do between pressure to get rid of a recommendation and pressure to adopt a recommendation in the first place? Any kind of pressure, Justice Alito, is incompatible in our view with the statutory guarantees of independence. I don't see how that distinction can be reconciled with the text of a statute that not only guarantees the independence of the task force members and their recommendations, but also says that the task force and their recommendations have to be immunized from political pressure to the extent practicable. I just don't see how that distinction can be squared with anything in the text of the statute. I think what Mr. Mupon is trying to do is salvage some role for 299B-4A6 because it's not plausible, I think even on the government's view, to allow the earlier enacted statutes, such as Section 202 and the reorganization plan, to completely swallow up these later enacted guarantees of independence. So they're trying to draw some line, but there's nothing in the text of the statute that can provide an anchor for the distinction that he's trying to draw. Suppose it were ultimately, suppose it is ultimately decided that the statute implicitly confers the appointment power on the secretary and then how much more of the statute would have to be jettisoned in order to make it constitutional? None of the statute needs to be jettisoned in order to make it constitutional, even under our reading of the statute. If the court decides that Congress has vested the secretary with appointment power over the task force, the appointments are still unconstitutional in our view because they're principal officers. They have to be appointed by the president and the Senate no matter what. But if the court even rejects that view, there's still the problem that the task force was appointed by the AHRQ director for 13 years, between 2010 in March and June of 2023, and there has to be some remedy issued for those admitted constitutional violations. So that would be for what was done before Secretary Becerra. What about going forward, what would need to be done? Going forward, it will depend on whether the court thinks these are principal officers. If the court thinks they're principal officers, then they have to be appointed by the president. Suppose we thought that they were inferior officers. If the court thinks they're inferior officers, there should be a remand in our view to the Fifth Circuit to rule on the question whether Congress has vested the secretary of Health and Human Services with appointment power. I don't think it's appropriate for the court to decide that issue based on how cursory the briefing is. Well, suppose we do that, the Fifth Circuit goes back and says that, or we tackle the question and we say that the statute vests the appointment power in the secretary. Then what? Then there has to be some remedy. That's what I'm asking. The remedy would have to be an injunction that restrains the secretary from enforcing any of the task force coverage recommendations that's issued between March of 2010 and June of 2023. Even the government concedes the task force was unconstitutionally appointed during that time. So I don't see how the government can deny that we're entitled to at least that much. And what would be the remedy going forward if we went along that? The remedy going forward, if the court concludes that they're inferior officers and that the secretary has been vested with appointment power, there should be no remedy going forward. We only can get a remedy for those past that 13-year window. Thank you. Mr. Sobier? I can look this up later, but I thought that at a certain point the secretary had issued something saying that he was accepting. He did, yes. He did. So why do we need a remedy if you're not questioning that he was entitled to do that? Oh, we absolutely are questioning that he's entitled to do that. For the same grounds, but if we say that they're inferior officers that... Right. So here's why that doesn't work. This is the ratification memo. It appears on pages 34 to 35A of the joint appendix. Fifth Circuit specifically held that Secretary Becerra had no authority to issue that ratification memo. That's on pages 27A and 28A of the petition. Is that because he... Why? Because he has no authority to impose preventive care coverage mandates. Only the task force can do that. The government did not seek certiorari on that question. They have not asked, and they are not asking this court to reverse that part of the Fifth Circuit's ruling. So that is a closed issue. Even if it were properly... Then I'm going to let the SGA answer.  But even if it were properly before this court, that document is invalid because the Fifth Circuit's right. Secretary Becerra doesn't have the authority, but even if he did, that needs to go through notice and comment rulemaking because it's a substantive rule, it's a legislative rule that imposes binding obligations on private insurers, and it's implementing delegated authority that's been given to one of the agencies in the federal government. So it has to go through notice and comment under Section 553, and it didn't. Mrs. Kagan? It does seem, Mr. Mitchell, as though, putting aside the vesting issue for now, that your argument really does rise and fall on how we read that independence language. And, you know, just an alternative view of that language is something along the lines of, look, the members of this task force are going to be subject to some kinds of influence because somebody can remove them, and also because they're subject to supervision. But we want them to approach their jobs with a spirit of independentness. And also, Congress is saying to the people who, you know, who do supervise and who have discharge powers over them, you too should think about the fact that this system works best if the task force members are treated as independent. But it's hortatory. It's not saying that nobody can fire them. It's not saying that nobody can supervise them and nobody can, you know, prevent their recommendations from going forward. It's hortatory. So why shouldn't I read the statute that way? Even if Your Honor reads the statute that way, there's still principal officers under Arthrex. Because under that view that Your Honor is describing of independence, there's no authority in the Secretary to formally review and formally reverse the decisions the task force is making in either direction. And that's what Arthrex says is key. There may be informal ways the Secretary can influence the task force, such as removal or threatened removal or other types of tactics. But Arthrex discusses all of these types of informal means of influence. Again, pages 15 and 16 and 18. Okay, so then I'm going to say, then your argument depends on a pretty aggressive read of Arthrex. Because I thought Arthrex said, we're dealing here with adjudicators. We're not dealing with every circumstance, every scenario. You know, we're dealing here with a particular kind of officer. I just, I don't think that's an aggressive reading at all. Because Arthrex says the touchstone for principal officer status is whether there is formal review available of the relevant official's decision making. And even under the government's construction of the statutes, the only formal review that they're providing is formal review of an affirmative decision by the task force to issue an A or B rating. They admit that the Secretary can't reverse the task force if it makes a decision in the opposite direction, a decision not to impose an A or B rating. I mean, that alone is enough to make them principal officers, even under the SG's view, and even under your Honor's proposed interpretation of the word independent. At the end of the day, when you go back to section 300GG-13A1, it is the task force recommendation that matters. That is what is binding on insurers. It is not the Secretary's decision that can bind insurers. So even if the Secretary were to say, I hereby disapprove this task force recommendation, that's useless when it comes to section 300GG-13A1. Because what matters is what the task force says. It's not what the Secretary says. Thank you. Justice Gorsuch? If I understood your exchange with Justice Sotomayor, and I just want to make sure I do, Mr. Mitchell, your view is if you should win either on the view that they're principal officers or if we should remand on the basis that they're inferior officers who may not have been appointed by the Secretary, that the ratification of the Secretary of the task force past actions must fall for a couple of reasons. One, he has no authority. I want you to spell that out a little further. And second, there was no notice and comment. And I understand that one. I want you to spell out the first one a little bit further. Make sure I've summarized it correctly, first of all. And just to be clear, there's a third reason, which is that issue is not properly before you. That was my next question. I didn't see that in this case. So what do we do about it? I'm happy to answer your Honor's question. But again, it's not properly before this Court because it's not in the scope of the QP. The government did not seek certiorari on the question. And at no point anywhere in the briefing or in Mr. Mupon's oral presentation today has the government asked this Court to reverse that part of the Fifth Circuit's ruling. But the ruling is nonetheless correct because the only entity that has the power to impose preventive care coverage mandates is the task force. The Secretary's role is only to determine when those coverage mandates take effect. So for the Secretary to go out and say, I hereby ratify the task force recommendations, that has no more legal force than if I were to produce a notice that says I ratify the task force recommendations. I don't have any authority to impose preventive care coverage mandates either. Neither does the Secretary. So the document has no force. That's what the Fifth Circuit said in its opinion. And that's completely right. The other reason is notice and comment. The Fifth Circuit did not reach that issue. But this is undoubtedly a substantive rule. It's clearly a rule. And it's a substantive rule as well because it's imposing binding legal obligations on private insurers. It's prescribing law and policy. So it has to go through notice and comment unless some exception applies. Maybe a good cause exception if the government wants to argue for that. But again, they've waived this entire issue. So I don't think they can possibly make that type of argument now about how an exception to notice and comment might kick in. This is Kavanaugh. Your theory, I think, depends on us treating the task force as this massively important agency that operates with unreviewable authority to make really critical decisions that are going to affect the economy. Yes, it is. And without any supervision or direction by the secretary. And normally before that kind of thing would happen, Congress would have provided stronger indications that this task force is enormously important in the American economy and would have treated it such. And I just don't see indications of that. And it's a big picture question related to my earlier question. But I just don't see the indicators that, oh, this task force, called the task force, is more powerful than the secretary of HHS or the president in terms of how these recommendations are going to affect the health care industry. It is more powerful than both of those individuals you mentioned. It's not my theory, Justice Kavanaugh. It's how the statute is written. It says the task force shall be independent and shielded from political pressure to the extent practicable. It's hard for me to see stronger language than that if Congress is trying to create a new... This goes back to the history. I mean, when that was originally drafted, they weren't binding. And I don't think Your Honor should be surprised that Congress would write the statute this way because it's perfectly consistent with this court's current doctrine. They are not exercising executive power. So Myers and all those lines of cases about how the president has to remove executive office... What are they exercising? They're exercising quasi-legislative power. It's not quasi-judicial. They're not adjudicating anything. But they cannot enforce the law against anyone. They are making recommendations that have binding effect under another statute. That's quasi-legislative power, and it's a multi-member agency. It's not headed by a single director. So the holdings of SILA law, Collins against Yellen, none of that applies here. This is perfectly constitutional under the court's current doctrine with respect to Article II and the vesting clause. Thank you. Justice Barrett? Justice Jackson? So I think your argument might be circular, and I'm sitting here trying to figure out how that is happening. And it's a little frustrating, but maybe you can help me to untangle it. It goes – it starts with Justice Kagan's point, which is we're looking at the independence provision. And she says, okay, I'm not reading that as independent of supervision. I'm reading that as independent duty to make their own judgment. Your response in your discussion with her was, well, even if that's the case, it doesn't matter because these folks are principal officers. And you point to Arthrex. And you say that the test in Arthrex is that there is – there has to be formal review available, and we don't have that in the statute. Now, Mr. Mupon says, well, we do have the provisions that make the secretary over this entire thing, and he says that counts. You say it doesn't. To resolve that issue, who's right about whether there actually is formal review available, I took you to say the reason why you're right is because of the independence provision. Well, it's more than just that. No, but wait. This is important because this is the circularity, right? That if you come back and you say the reason why I'm right that there is not formal review under Arthrex is because we have an independence provision that has these people operating independent of the secretary or political pressure, then I'm back to Justice Kagan. But that's not what the independence provision means. So you both can't, I think, disclaim it on the front end. Independence, it doesn't matter. Justice Kagan might be right, and then pick it up on the back end to say, ah, but it's the independence provision that resolves the debate between you and Mr. Mupon over whether there's sufficient control by the secretary in the statute. That's not our argument, Justice. Okay. We are not relying on the word independence to preclude secretarial review. We're relying on section 300GG-13A1, which says that it's the recommendations of the task force that must be given legal force of effect, not the recommendations of the secretary. So if we were to adopt Justice Kagan's proposed interpretation of the word independent, the task force will make its independent recommendations. But the secretary has no ability to veto them. He can try to veto them. He can issue a document saying, I, Secretary Kennedy, disapprove. But why do you say he has no ability because you read independent in one? There's nothing in the statute that says the secretary can't veto. So where do you get that construct? We get it from 300GG-13A1 because the statute says that it's the A or B ratings of the task force that must be followed when determining what preventive care insurers must cover. It is not the recommendations of the secretary. Thank you. Thank you, Your Honors. Thank you, Counsel. Mr. Mupon? I'll pick up right there. So on the question of whether the secretary has the power to review, GG-13 just says that recommendations that are in effect are binding. It doesn't say one word about whether the secretary could prevent the recommendation from taking effect by directing the task force to withdraw it. His only argument on that is to rely on the language independent, interpreting independent way more broadly than necessary, and creating constitutional problems rather than solving it. He recognizes that, and so he falls back on the point that even we agree that the secretary can't force the task force to make recommendations. But as Justice Gorsuch pointed out, that was already decided in free enterprise fund. And my friend pointed out that in free enterprise fund, the commission had lots of power over the PCAOB, which is true. But if you look at page 504 of free enterprise fund, this is what the court said. The act nowhere gives the commission effective power to start, stop, or alter individual board investigations. That is exactly the argument he's making here, that because they didn't have that power, in this case, they're principal officers, and free enterprise fund says even though they didn't have that power, they were inferior officers. Turning to the removal question, I didn't really hear any argument for why, as a statutory matter, you should read independent to create a removal restriction, even though that creates lots of constitutional problems. The best he did was to suggest, well, maybe it's just a question of timing. But actually, the timing cuts against them, too. Before A6, the provision that has the independent language, it was added to the statute with the ACA. At the time that Congress gave the task force these powers, that's when they added the language about independent and free from political pressure to the maximum extent possible. So if they wanted to impose a removal restriction, they would have done it using all the language that Justice Kagan and Justice Kavanaugh suggested. That's how they normally say impose removal restrictions. They wouldn't have just used the word independent. And Arthrex doesn't solve this problem either because, as the case makes clear, there was not at will removal restriction power in Arthrex. In Arthrex, the APJs were only subject to removal for the efficiency of the service. They had cause protection. So Arthrex doesn't solve it for them either. Turning to the appointments question, I agree that it wasn't decided below and it could be remanded, but I think the colloquy here today makes clear why the answer is quite clear and why it would be better to just resolve it now. My friend says that the statute is agnostic about who can appoint. I believe he even said that the Secretary of Energy or a private party could appoint these people. That is obviously wrong on its face. Among other things, it doesn't answer what happens if three different people all purport to appoint different people to the task force. You cannot possibly read the statute to say it's agnostic about who picks the members of the task force. And given that someone has to pick them, the word convened must suggest that the person doing the convening is the one who's doing the picking. So now all we have left is, is it the director or is it the secretary? And on that, we have two points. The first is that under the RE-ORG Act, all of the director's powers are the secretary's powers. The second point we have is, as Justice Kavanaugh pointed out, under 299, the secretary exercises all the powers of that agency through the director. So we think that that is pretty clear evidence that it is vested by law in the secretary. To use a hypothetical that came up earlier, if the statute just said it shall be appointed by either the director or the secretary, it would plainly be constitutional if the secretary was the one that did the appointing. We agree that if the director did it instead, and the secretary had nothing to do with it and didn't approve it on the back end or on the front end, that would be unconstitutional as applied. But there's no question that the statute would be permissible if it purported to vest the appointment authority in both the head of the department, permissibly, and someone else. And that's exactly what the statute does two different ways. And if there was any doubt about this, Hartwell, this is an easier case for us than Hartwell. In Hartwell, as you pointed out, there was an inferior officer who had the ability to make the appointment with the secretary's approval on the back end. But the decision in the first instance was vested in someone who wasn't the head of the department. And yet the court still said that that was enough to satisfy the appointment clause. Here, the secretary can, and in fact has, exercised the appointment authority in the first instance. So if Hartwell is okay, this is a fortiori from that. So for all those reasons, there's just no real good reason to remand this to the Fifth Circuit on this appointments question. There is no way you can read the statute to vest the appointment in anyone other than the director slash secretary, and the secretary has complete control in that situation. Final point on remedy, we agree with Mr. Mitchell on this. If we are right that these are inferior officers, prospectively, he's not entitled to any remedy. And retrospectively, there will need to be a remand to figure out whether the old recommendations either have to be enjoined or can be ratified by the task force. Thank you, counsel. The case is submitted.